UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JAMES I. DALE,<br>a/k/a James Irving Dale, | \* | CIV 14-4003 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION<br>AND ORDER |
| CBM CORRECTIONAL FOOD<br>SERVICES; BARRY SCHROETER; and<br>JOHN TRIERWEILER, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This case is a suit by a former prisoner charging a violation of 42 U.S.C. § 1983. The corporate Defendant and the two individual Defendants are not state employees. The two individual Defendants were, at the times applicable, employees of CBM Correctional Food Services (CBM). CBM provides food services to all South Dakota state correctional facilities. The facility in question is at Springfield, South Dakota, Mike Durfee State Prison (MDSP). The State claims that sovereign immunity excludes Plaintiff from seeking monetary damages against Defendants for any actions taken in their official capacity. It is also claimed that the individual Defendants were acting within the scope of their employment and that they are entitled to qualified immunity.

Defendants have moved for Summary Judgment concerning the only remaining claim, the First Amendment under 42 U.S.C. § 1983 in Plaintiff James I. Dale's Second Amended Complaint. Mr. Dale was originally incarcerated with the Department of Corrections in 2001 and paroled to Minnesota in 2007. Due to a parole violation, Mr. Dale was returned to the South Dakota Department of Corrections in September 2013. Mr. Dale claims an inhibition to pursuing his Jewish faith in that he was fed food which was not kosher while incarcerated at MDSP. Mr. Dale was released from that prison on November 1, 2016. He was then incarcerated in Minnesota correctional facilities and was released from those institutions in March 2018. The Religious Land Use and

Institutionalized Persons Act (RLUIPA) claims are not permitted against state officials in their individual capacities because the Spending Clause authority by which RLUIPA was enacted does not support an action against an official in his or her individual capacity. *Van Wyhe v. Reisch*, 581 F.3d 639, 655, n.6 (observing district court holding). *See also, Jihad v. Fabian*, 2011 WL 1641885 at *8 (D. Minn. Feb. 17, 2011) (RLUIPA does not permit claims against prison officials in their individual capacities because individual prison personnel do not themselves receive federal funding). Further, because the state did not waive its immunity from suit for monetary damages by accepting federal funds on the conditions set forth in the institutionalized persons section of RLUIPA, official capacity claims under RLUIPA are limited to injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 293-96, 131 S.Ct. 1651, 1663-65 (2011); *Van Wyhe*, 581 F.3d at 655. The facts of record in this case through July 2015 are set forth in the Report and Recommendation from Magistrate Judge Duffy concerning the first Motion for Summary Judgment, Doc. 68. The subsequent filings of note for purposes of this third Motion for Summary Judgment are four Affidavits from persons who were prisoners at MDSP that worked in the prison kitchen, along with the Affidavits previously filed, which are summarized in the Report and Recommendation. (Doc. 68)

Christian Thomas Mason stated that he worked for two years in the prison kitchen and that sometimes kosher pots and pans were cleaned with other non-kosher utensils and that CBM employees, unnamed, made cheese sandwiches on the burner reserved for kosher food.

Frederick Maurice Montgomery claims the use of non-kosher spoons and pots but when he worked in the kitchen is not stated. In addition, he worked in the prison kitchen in Sioux Falls, not in MDSP in Springfield, South Dakota.

Jerald J. Hufford claimed that CBM employees cooked food for themselves on the hot plate for kosher foods as did prison employees. (Doc. 100-4) Mr. Hufford worked in the MDSP kitchen or dining hall from December 17, 2013 until February 13, 2014. (Doc. 64-4)

Jesus Torres Vela worked in the MDSP kitchen from 2008 through 2009 and again in 2013 and he claimed non-kosher spoons and pots were used with kosher food and that there was no CBM employee supervision.

Defendant CBM Correctional Food Services is a corporation that provides all of the food services for the South Dakota State correctional facilities.

Defendant Barry Schroeter was the Food Services Supervisor at MDSP from 2011 to October 2015. Defendant John Trierweiller was the Supervisor of CBM operations at all South Dakota Department of Corrections facilities and once Defendant Schroeter left CBM to go to another state institution at Yankton, South Dakota, Defendant Trierweiller then also became the Food Services Supervisor at MDSP, possibly as a position in addition to his overall responsibilities. While Defendant Schroeter was the Food Services Supervisor, he stated that inmate kitchen workers were constantly supervised by other CBM employees and staff members during the preparation and service of all meals at MDSP. He personally observed the preparation of meals in the kitchen and dining hall on a daily basis. That observation would have included the observation of the preparation of kosher meals. He would not have observed the preparation of each (breakfast, lunch, or dinner) kosher meal every day. While Schroeter was the Food Services Supervisor at MDSP, an assistant who had served as Assistant Food Service Director answered directly to him. In addition, several shift supervisors answered to both the Assistant Food Service Director and Schroeter. If any of these individuals received complaints from inmates, inmate kitchen workers, or other CBM employees, or DOC staff regarding preparation of the kosher meal they would have reported those complaints to Schroeter as the Food Service Director. Schroeter stated he received no such complaints that kosher utensils, pots, or pans were washed with the mainline utensils, pots, or pans. There was a complaint filed by Mr. Dale with MDSP DOC staff. The DOC staff talked with "kitchen staff" regarding whether the kosher utensils were used to stir and serve non-kosher meals. Schroeter does not recall this complaint having been forwarded to him and he does not recall a conversation with DOC staff regarding that complaint.

DISCUSSION

Official Capacity Claims

Under *Will v. Midrigan Department of State Police*, 491 U.S. 58 (1989), state entities and officials are not subject to § 1983 liability in their official capacity for damages but they are subject to prospective relief. No prospective relief is now available as Mr. Dale is no longer a prisoner. Accordingly, the official capacity claims against the three Defendants are dismissed. The reason for the dismissal is not Eleventh Amendment immunity as the Court does not reach that issue. If the Court did reach that issue, the result would be the same. The reason for the dismissal is the *Will* division of what a "person" is for purposes of § 1983 jurisdiction. If this case was now for prospective relief such as an injunction, then the Defendants would be "persons" for § 1983 purposes. But under *Will* the Defendants are not "persons" for § 1983 purposes when retrospective relief, *i.e.*, damages, are sought.

Individual Capacity Claims

The Court considers CBM to be a "person" within the meaning of § 1983 actions. As a corporation, CBM is determined to be an individual or a person at least for First Amendment purposes in *Citizens United v. FEC*, 558 U.S. 310 (2010). *Richardson v. McKnight*, 521 U.S. 399 (1997) held that two prison guards who were the employees of the private corporation that had a contract with the state to manage a correctional center were not entitled to qualified immunity when they allegedly used excessive force on a prisoner causing him injury. In that holding, there were three caveats. The first was whether the defendants were exposed to § 1983 liability even though employed by a private firm. That question was remanded for determination pursuant to *Luger v. Edmonson Oil Co.*, 457 U.S. 922 (1982). This Court determines under *Luger v. Edmonson Oil Co.* that the three Defendants in this case did act under color of state law. The second caveat was that the *Richardson* court "answered the immunity question narrowly, in the context in which it arose." *Richardson* at 413. The context under which *Richardson* arose was one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms. The context in the present case is similar in that here CBM was providing the complete food service for the state penitentiaries in South Dakota with little oversight

4

from the State as to the provision of those services, services that are provided in competition with other firms. The third caveat was that the decision of *Wyatt v. Cole*, 504 U.S. 158 (1992) did not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar* could be entitled to an affirmative defense based upon good faith and/or probable cause. The Defendants did not plead that affirmative defense so that issue is not before the Court. The *Richardson* court observed "we have found evidence that the common law provided mistreated prisoners in prison leasing states with remedies against mistreatment by those private lessors." *Richardson* at 405, citing among other jurisdictions, *Weigel v. Brown*, 194 F. 652 (8th Cir. 1912) (prison contractor liable for unlawful whipping).

Defendants urge that *Filarsky v. Delia*, 566 U.S. 377 (2012) is controlling. The *Delia* case issue was stated by the Court as follows: "The question in this case is whether an individual hired by the government to do its work is prohibited from seeking such immunity solely because he works for the government on something other than a permanent or full-time basis." *Delia* at 380. The lawyer serving as a hearing officer in *Delia* was a private attorney and not a city employee. The defendant was an experienced employment lawyer who had been hired to conduct an administrative investigation of an employee. He had previously represented the city in several investigations. The *Delia* court held that the contractor lawyer was entitled to seek qualified immunity. That situation was completely different than the present as in the present case the Defendants were full-time in their providing food services for the penitentiaries in South Dakota. These individual Defendants as in *Richardson*, are similarly situated private firm employees that under the context of food service provision, are not entitled to qualified immunity. As *Delia* instructs, whether full time or part time employees of the state is not determinative. In *Delia* the Court distinguished where public employee prison guards were entitled to qualified immunity while "prison guards employed by a private company and working in a privately run prison facility do not enjoy the same protection. We explained that the various incentives characteristic of the private market in that case ensured that the guards would not perform their public duties with unwarranted timidity or be deterred from entering that line of work." *Delia* at 393.

5

In analyzing which situations qualified immunity should or should not be applied, the Courts have considered avoiding unwarranted timidity on the part of those engaged in the public's business as being "the most important special government immunity-producing concern." *Delia* at 390 quoting *Richardson* at 521 U.S. 409. The concern of unwarranted timidity is more applicable to guards than to those providing food services. Another factor, the competition of the market place, is more of a consideration with regard to food services with more entities seeking to provide food services. There are surely more entities providing institutional food services than there are providing full prison operation. In addition, a corporation running a prison for a governmental entity could more likely anticipate prisoner claims than would a food service to a prison, or at least a greater volume of claims. The *Richardson* Court recognized that those seeking exemption from personal liability have the burden of showing that such an exemption is justified. Each of those considerations indicate no qualified immunity for food service providers and their employees. If the exemption for private guards in *Richardson* was not justified, then surely an exemption from personal liability cannot be justified for those who provide prison food services, no matter whether a corporation or a living person. Qualified immunity is not available to these Defendants regarding their individual capacity.

## CBM CORPORATION

For purposes of the Court's ruling upon summary judgment, the Court must view the events in the light most favorable to the Plaintiff. As a result, this means that in considering this summary judgment motion there were numerous instances according to several prisoners who worked in the kitchen, despite the Defendants' denials, where in the preparation or serving of kosher food or washing of kosher food service implements that those implements were either mixed with non-kosher implements or in other instances, non-kosher implements were used. The evidence is indefinite but still substantial as to the extent of any such misuse despite CBM's stated policies of complying with kashrut requirements.

In ruling on the second of these three summary judgment motions, the Court found that there was an issue of material fact as to whether CBM had notice of the violations Dale alleges. (Doc. 115) There are other lower level CBM employees who are not Defendants that worked directly in

the prison kitchen. There are no affidavits from them contradicting the prisoner kitchen worker affidavits. It is settled law in the Eighth Circuit that a kosher diet must be provided in a prison setting. *Love v. McCown*, 38 Fed. Appx. 355 (8th Cir. 2002) (unpublished opinion affirming preliminary injunction). Subsequently, the district court found that the Arkansas Department of Corrections had "made reasonable efforts to accommodate those inmates requesting kosher meals since March 3, 2004." *Fegans v. Norris*, 2006 WL 6936834 (E.D. Ark.), aff'd 537 F.3d 897 (8th Cir. 2008). What is not established in the Eighth Circuit is how far the courts must go into prison administration on what would amount to the overseeing of the kosher diet and food acquisition, storage, preparation, serving and cleaning of utensils for this and other specialized religious diets. What amount of instances of non-compliance with kashrut food practices amounts to a custom or a practice as opposed to the stated policy of compliance? As in *Fegaus v. Norris, supra*, is reasonable efforts to accommodate enough, or is it instead reasonable accommodation as to results without regard to the efforts? The latter should be the test. There are material issues of fact as to whether CBM had notice of kashrut violations and whether the claimed violations placed a substantial burden on Mr. Dale's exercise of his religious beliefs.

## INDIVIDUAL DEFENDANTS

The individual Defendants were acting within the scope of their employment. The claims against the individual Defendants in their official capacities are barred by the *Will* doctrine, *supra*. Some of the claims against James Trierweiller as an individual are regarding his position as food supervisor for CBM in all Departments of South Dakota Correctional Facilities. There is no personal involvement shown by Mr. Trierweiller in that capacity. That portion of the claim against Mr. Trierweiller in that capacity is too remote for liability to attach so that portion of the claim must be dismissed.

Defendant Schroeter was the Food Services Supervisor at MDSP and left that position in October 2015 and then Mr. Trierweiller also assumed that responsibility so his situation in that position is the same as Schroeter's regarding Mr. Dale's claims except that they served in that capacity at different times. None of the Affidavits specified that at the time that affiants worked in the kitchen was any time on or after when Mr. Trierweiller took over those responsibilities for

7

MDSP Food Services in October 2015. Accordingly, the remaining claim against Mr. Trierweiller in his individual capacity as Food Services Supervisor at MDSP is dismissed.

Finally, there is the First Amendment claim against Mr. Schroeter in his individual capacity. Both Schroeter as well as Trierweiller, when each served as Food Services Supervisor at MDSP, had two layers of CBM employees reporting to them who were in turn supervising prisoners who worked in the prison kitchen. Superior officers are not subjected to § 1983 liability merely because of their authority to control subordinate employees. *Rizzo v. Goode*, 423 U.S. 362 (1976), *Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989). Instead, the rule against respondeat superior liability is qualified by requiring that the supervisor sued was personally involved in the violation of the Plaintiff's Federal rights. See *Wright v. Smith*, 21 F.3rd 496, 501 (2nd Cir. 1994) and *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3rd Cir. 1988).

Viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that there were numerous instances in which kashrut practices were not followed in the preparation and serving of food that Mr. Dale would have eaten. There is also evidence that some of the food served was not appetizing as some of the apples were old with worms in them and some of the vegetables were described as "slimy." However, the previous ruling was that evidence does not establish that the food served was unhealthy. Accepting the prisoner statements as true, nonetheless there is no issue of material fact raised that the individual Defendants Schroeter and Trierweiller were personally involved by their actions or inactions in the violation of the Plaintiff's federal constitutional rights, nor is there a showing that either individual was deliberately indifferent to Plaintiff's Constitutional rights. Accordingly, the claims of Mr. Dale under the First Amendment against Defendants Schroeter and Trierweiller in their individual capacities are dismissed.

Plaintiff also requested injunctive and declaratory relief. Those claims are moot as Plaintiff is no longer incarcerated. *Gladsen v. Iowa Department of Corrections*, 551 F.3d 825, 835 (8th Cir. 2009).

Plaintiff claims that the kosher food kitchen preparation area has not been certified by a Rabbi and that therefore the food served is not kosher. Defendants admit there has been no such certification. It has not been established in the record that any such certification is necessary to prepare and serve kosher food. Defendant admits that certification is necessary for commercial establishments such as restaurants, caterers, hotels, and airlines. Is a prison where the prisoners reside more similar to those entities than a personal residence? It does seem so, but the record does not answer that question. The Kashrut, a set of Jewish religious dietary laws, might answer the question.

Plaintiff has moved for appointment of counsel. There is now only one claim left against one Defendant. The Plaintiff has some college education and has well-represented himself in this lawsuit in gathering affidavits, providing other information and preparing pleadings including briefs. The request for appointment of counsel is denied.

Accordingly,

IT IS ORDERED:

1. That Defendants' Motion for Summary Judgment, Doc. 143, is granted as to all official capacity claims against CBM Correctional Food Services, Barry Schroeter, and John Trierweiller.

2. That Defendants' Motion for Summary Judgment, Doc. 143, is granted as to the individual capacity claims against Barry Schroeter and John Trierweiller.

3. That Defendants' Motion for Summary Judgment, Doc. 143, is denied as to the individual capacity First Amendment claim against CBM Correctional Food Services.

4. That Plaintiff's Motion to Appoint Counsel, Doc. 150, is denied.

5. That the parties have already engaged in discovery, and pursuant to Plaintiff's Motion for a Trial Date, Doc. 149, the jury trial will commence on Tuesday, September 18, 2018.

6. That the final date for submitting Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists shall be fourteen (14) days before the pre-trial conference; and the final date

for the parties to file objections, if any, under Rule 26(a)(3) is seven (7) days before the pre-trial conference.

7. All motions in limine, with supporting authority, shall be in writing and filed, together with proposed instructions, with supporting authority, with the Court fourteen (14) days before the pre-trial conference.

8. That all motions not previously disposed of will be heard and a pre-trial conference will be held on Monday, August 27, 2018, at 9:00 A.M. The lawyer who will be the lead trial counsel at trial for the Defendant is to be in attendance at the pre-trial conference unless specifically excused by the Court from being in attendance. Plaintiff shall be in attendance at the pre-trial conference.

9. That jury trial will commence in Sioux Falls, South Dakota, on <u>Tuesday</u>, September 18, 2018, with counsel to be present at 9:00 A.M., for the Court to rule on any previously filed motions in limine that the Court has not ruled upon, and with the jury to report at 9:30 A.M.

10. That the parties shall promptly contact the Magistrate so that the possibility of settlement discussion with the assistance of the Magistrate can be pursued.

11. That the schedule herein may be modified by the Court upon a showing of good cause.

Dated this 5th day of July, 2018.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

By:_____
Deputy